IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Dewayne Shawn McKenzie, | ) | Case No. 8:13-cv-02488-RBH-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden Larry Cartledge; Warden of | ) | |
| Perry Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 16.] Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on September 9, 2013.[1] [Doc. 1-3.] On December 11, 2013, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 16, 17.] On December 12, 2013, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 18.] On January 15, 2014, Petitioner filed a response in opposition to Respondent's motion. [Doc. 23.] Having carefully considered the parties'

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on September 9, 2013. [Doc. 1-3 (envelope marked as received by prison mailroom on September 9, 2013).]

submissions and the record in this case, the Court recommends that Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is presently confined at the Perry Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Darlington County Clerk of Court. [Doc. 1 at 1.] In August 2005, Petitioner was indicted for criminal sexual conduct with a minor in the second degree and a lewd act with a child. [App. 393–95.[2]] On March 20, 2006, represented by Cheveron T. Scott ("Scott"), Petitioner proceeded to trial. [App. 1–308.] On October 12, 2005, the jury returned its verdict, finding Petitioner guilty as indicted. [App. 293–94.] Petitioner was sentenced to twenty-five years imprisonment for the criminal sexual conduct charge and five years for the lewd act with a child charge, to run consecutively. [App. 306.]

**Direct Appeal**

Petitioner timely filed a notice of appeal. On April 7, 2008, Robert M. Dudek of the South Carolina Office of Appellate Defense filed a brief on Petitioner's behalf. [Doc. 17-4.] The brief raised the following issue:

> Whether the court [sic] erred by refusing to allow [Petitioner] to testify during the *in camera* hearing on the suppression of his blood evidence based upon *Schmerber v. California*, Fourth Amendment, and S.C. Code § 17-13-140 violations since defense counsel told the judge that Ervin never represented [Petitioner], and the state maintained Ervin consented to taking [Petitioner's] blood sample being taken while he represented [Petitioner], because the judge's ruling that the [Petitioner's] testimony would be "completely self-serving" and that appellant

---

[2]The Appendix can be found at Docket Entry Number 17-3.

2

did not have the background to understand the issue were
illegitimate reasons to deny appellant his right to testify?

[*Id.* at 4.]  On September 11, 2008, the South Carolina Court of Appeals issued a per

curiam opinion dismissing Petitioner's appeal because "although a defendant is entitled to

testify at a suppression hearing, this issue is not preserved for our review."  [Doc. 17-8 at

2.]  Remittitur was issued on February 13, 2009.  [Doc. 17-9.]

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR")

on February 20, 2009.  [App. 340–47.]  Petitioner raised the following grounds for relief,

quoted substantially verbatim:

> (a) The judge abused his discretion by denying me the right to
> testify at a hearing before trial to suppress my blood evidence.
>
> (b) My counselor was ineffective by not properly objecting to
> the judge error preserving the issue for appellate court review.
>
> (c) I was denied the right to a fair trial because of violations of
> my 4th, 6th and 14th amendment constitutional rights.

[App. 342.]  In support of his grounds for relief, Petitioner provided the following facts,

quoted substantially verbatim:

> (a) Judge's failure to hear testimony from me was prejudicial
> because if the Court would have heard my testimony and
> determined I did not consent to having my blood drawn or
> ruled the consent was invalid or ruled that how my blood came
> to be taken constituted an invasion of privacy under the State
> Constitution, or if the Court determined that the process used
> to obtain the blood sample did not meet due process
> requirements there's no way the outcome of the trial would
> have been the same.
>
> (b) Counsel's failure to object to the second page of a consent
> order which was not in inspection and discovery was prejudicial

3

towards me because if the court would have heard the objection and ruled there was a (Brady) violation and did not allowed [sic] the second page of the consent order into evidence there would have been a different outcome at trial.

(b) Counsel's failure to call Jay Ervin as a witness because the alleged attorney consented on behalf of my blood being drawn. I informed counsel that he never represented me that denial needed to be explored.  I was prejudiced because if the court would have heard his testimony and determined he was not the authority there would have been a different outcome at trial.

(b) Counsel's failure to object when DNA evidence was introduced at trial denied me the proper defense to preserve my right for a direct appeal because if the objection was preserve[d] there would have been a different outcome on direct appeal.

(b) Counsel's failure to object to the state witness Cherelle McFadden testimony committing perjury about her statements to Police Officer Epps and her own written statements.  If the court would have heard objection and ruled to dismiss the witness based on perjured testimony then there would have been a different outcome at trial.

[App. 346–47.]

A hearing was held on the PCR application on September 14, 2009, and Petitioner was represented at the hearing by Martin S. Driggers, Jr.  [App. 355–84.]  Testimony was received from Petitioner and Scott.  [*Id.*]  On October 19, 2009, the PCR court filed an order denying and dismissing the application with prejudice. [App. 385–91.] Petitioner filed a Rule 59(e) motion pursuant to the South Carolina Rules of Civil Procedure, requesting reconsideration of the dismissal order. [Doc. 17-10].  The reconsideration motion was denied on January 29, 2010. [Doc. 17-13.]

A notice of appeal was timely filed and served.  On July 29, 2010,Wanda H. Carter of the South Carolina Commission on Indigent Defense filed a petition for writ of certiorari

4

on Petitioner's behalf in the South Carolina Supreme Court, seeking review of the PCR

court's decision and raising the following issue:

> Counsel erred in not properly challenging the consent order
> that produced petitioner's blood work/DNA evidence in the
> case at the in camera suppression hearing, to the extent that
> counsel failed to present the testimony of the attorney who
> signed the consent order in order to establish that the attorney
> was unauthorized to sign a consent order, and because
> counsel failed to preserve for appellate review the trial judge's
> error in denying appellant the opportunity to testify at the in
> camera suppression hearing in order to explain and verify that
> the attorney who signed the consent order had no authority to
> do so.

[Doc. 17-14 at 3.]  On July 8, 2013, the South Carolina Court of Appeals denied the petition

for writ of certiorari.  [Doc. 17-16.] On July 17, 2013, Petitioner filed a pro se appeal of the

Court of Appeal's decision on his writ to the South Carolina Supreme Court [Doc. 17-17],

which was denied on July 22, 2013 [Doc. 17-18].  The Court of Appeals issued remittitur

on July 29, 2013.  [Doc. 17-19.]

### Petition for Writ of Habeas Corpus

As stated, Petitioner filed this Petition for writ of habeas corpus on September 9,

2013, pursuant to 28 U.S.C. § 2254.  [Doc. 1.]  Petitioner asserts the following grounds for

relief, quoted substantially verbatim:

**Ground One**:     Fourth Amendment right to the United States
Constitution violation against unreasonable search and
seizures.

*Supporting Facts:*     Trial judge error in ruling to deny a motion to suppress
a blood sample by allowing an invalid consent
*Schmerber* Order to be admissible in trial when there
was no valid consent or probable cause contain[ed]
within the invalid *Schmerber* Order for DNA testing.
See trial transcript.  Note: "The principal object of the

5

Fourth Amendment is the protection of privacy rather than property."

**Ground Two**:      Denial of due process, the right to be heard [,] a Fourteenth Amendment violation to the United States Constitution.

*Supporting Facts:*      Trial judge denied petitioner the right to testify during the suppression hearing.  The Attorney General took the position in the body of their brief on appeal that the State concedes that Petitioner had a constitutional right to testify at the suppression hearing.  Also the Court of Appeals admits in their opinion petitioner is entitled to testify at a suppression hearing.  See Attorney General appellate brief and the Opinion of the Court of Appeals.

**Ground Three**:      Ineffective assistance of counsel guaranteed under the Sixth Amendment to the United States Constitution has been violated.

*Supporting Facts*:      The PCR judge and the Court of Appeals w[ere] wrong for not granting relief because the totality of counsel's errors in failure to properly challenge the illegal search and seizure, failure to present the testimony of an unauthorized attorney who signed a[n] invalid Consent Order, and failure to preserve for appellate review the trial judge's error in denying Petitioner the opportunity to testify, resulted in prejudice to Petitioner and denied his constitutional guarantee to effective assistance of counsel.  See Post-conviction transcript.

**Ground Four:**      Plain error standard.  I challenge the validity of the PCR judge dismissal of a 59(e) file on my behalf.

*Supporting Facts*:      The issue raised in Ground one, two and three of this petition, plus the irregularity of the overall trial deprived Petitioner the opportunity to properly defend himself, which clearly affected the Petitioner's substantial rights, resulting in an unfair trial.  Petitioner has prove[n] there was an illegal search and seizure without consent during a suppression hearing.  Petitioner has shown he was denied a mean[ing]ful constitutional right to testify.  Also Petitioner has prove[n] his allegation of the evidence by meeting the two-prong standard test of

ineffective assistance of counsel and all other
allegation[s] the PCR judge denied.

[Doc. 1.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe

his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S.

519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978);

*Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less

stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under

this less stringent standard, however, the pro se petition is still subject to summary

dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court

can reasonably read the pleadings to state a valid claim on which the petitioner could

prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court

may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d

411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely

presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved

for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

7

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

9

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state court remedies and provides as follows:

> (b)   (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)    (i) there is an absence of available State corrective process; or
>>
>>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may

consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment.  S.C. R. Civ. P. 59(e).  Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court.  *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[3]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir.

---

[3]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

12

1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.[4]

### Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is

---

[4]In *State v. McKennedy*, the South Carolina Supreme Court reiterated that a petition for discretionary review to the South Carolina Supreme Court in criminal and post-conviction cases is outside South Carolina's standard review process, and therefore, "petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." 559 S.E.2d 850, 854 (S.C. 2002) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

13

barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3) & 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Sykes*, 433 U.S. at 87. In

14

such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure or where a "fundamental miscarriage of justice" has occurred. *Coleman*, 501 U.S. at 750; *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner

15

must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To pass through this actual innocence standard, the petitioner's case must be truly extraordinary. *Carrier*, 477 U.S. at 496.

## DISCUSSION

As an initial matter, Respondent concedes that Petitioner exhausted his state law remedies (though argues that some were not properly exhausted and thus a procedural bar applies, as discussed below) and that Petitioner is not in violation of the one-year statute of limitations under the AEDPA. [Doc. 17 at 14–15.]

**Procedural Bar**

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996). If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Here, Respondent contends that all grounds are procedurally defaulted and that Petitioner cannot show cause sufficient to excuse the default. [Doc. 17 at 15–18.] In Ground One, Petitioner alleges that his right against unreasonable searches and seizures was violated when he gave no valid consent for his blood to be drawn and the authorities had no probable cause to take his blood. Petitioner raised this issue to the trial court but did not object to the admission of the evidence after his initial motion to

16

suppress was denied. Petitioner's first ground is not cognizable for federal habeas relief. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 493 (1976). The Fourth Circuit has held that *Stone* applies post-passing of the AEDPA. *Simpson v. Stevenson*, Case No. 5:12-CV-2612-CMC, 2013 WL 3229685, at *1 (D.S.C. Jun. 25, 2013) (citing *Mueller v. Angelone*, 181 F.3d 557, 570 n. 8 (4th Cir. 1999)). Petitioner raised the issue of his consent to the blood draw on direct appeal [Doc. 17-14 at 4], and the improper search and seizure in his PCR application [App. 342]. Therefore, the Court finds that Petitioner had the opportunity to fully litigate the search and seizure issue in state court, and thus Ground One is not cognizable for habeas review. While not procedural barred, the Court need not consider the claim and it should be dismissed.

In Ground Two, Petitioner asserts that his Fourteenth Amendment rights were violated when he was not allowed to testify at the suppression hearing on the DNA evidence. Respondent argues that this ground is procedurally barred because it was not preserved at trial. In his direct appeal, Petitioner did raise the issue that he was not allowed to testify at the suppression hearing. As noted, on September 11, 2008, the South Carolina Court of Appeals issued a per curiam opinion dismissing Petitioner's appeal because "although a defendant is entitled to testify at a suppression hearing, this issue is not preserved for our review." [Doc. 17-8 at 2.] The Court agrees with Respondent that this issue is procedurally barred. "If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar."

17

*Johnson v. McFadden*, Case No. 13-CV-1794-RMG, 2014 WL 1918041, at *8 (D.S.C. May 12, 2014).  Here, the state appellate court found this claim procedurally barred because it was not properly raised and preserved at the trial level, and the Court will honor that bar. Moreover, Petitioner has given no basis for cause as to Ground Two.[5]  In his response, he argues that this claim has merit, but as noted, such a claim is insufficient to make a showing of cause.  However, Petitioner did raise this in his PCR application, and the Court will address the merits of this claim in Ground Three's discussion on ineffective assistance of counsel.  Ground Two should therefore be dismissed.

Respondent argues that Ground Three is procedurally barred in part.  The Court agrees that part of Ground Three is procedurally barred, but not the same part to which Respondents cite.  Respondents focus on the denial of certiorari and argue Ground Three should be procedurally barred because it is not cognizable in federal habeas review.  While a denial of certiorari is a discretionary decision of the South Carolina courts of appeals and not cognizable for federal habeas review, the Court reads Ground Three as an ineffective assistance of counsel claim that simply discusses the denial of cert as a supporting fact. The Court does find the assertion that counsel was ineffective for failing to object to the judge's refusal to let Petitioner testify at the suppression hearing to be defaulted.  Though raised in the PCR application, the PCR court did not address this matter. [See App. 385–91.] However, Petitioner did not raise the issue in his Rule 59(e) motion and therefore this issue is defaulted.  See *Marlar*, 653 S.E.2d at 266. Petitioner does not raise any cause

---

[5] Petitioner does allege actual innocence in his response to the default of Ground One, but not of Ground Two.  However, even if the Court were to consider actual innocence, Petitioner cannot overcome the default.  DNA evidence proved that Petitioner was the father of his rape victim's child [App. 182] and Petitioner has put forth no evidence, other than his self-serving statements in his response, to refute the jury's finding of guilt.

and prejudice with regard to Ground Three.  The Court will consider the remaining merits of Ground Three below.

As to Ground Four, Petitioner "challenges the validity" of the PCR court's denial of his motion for reconsideration of the order dismissing his application.  Respondent argues that this ground is procedurally barred because it is not a cognizable habeas claim.  Again, the Court draws a distinction between procedural default and whether a claim is cognizable, but agrees with Respondent that the claim is not cognizable and, thus, need not be considered on its merits.  Allegations of defects in PCR proceedings are not cognizable in a federal habeas action.  *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988); *Gray v. Stevenson*, Case No. 4:11-CV-227-CMC, 2012 WL 489010, at *16 (D.S.C. Jan 24, 2012).  Accordingly, Ground Four should be dismissed.

### *Merits of Claim*

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id*. § 2254(d)(2).  The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief.  *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that

> contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06. On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s

standard."[6]  *Richter*, 131 S. Ct. at  785.  "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas").  Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent.  *Id.*

Petitioner alleges that counsel was ineffective in failing to "properly challenge the illegal search and seizure, fail[ing] to present the testimony of an unauthorized attorney who signed a[n] invalid Consent Order, and fail[ing] to preserve for appellate review the trial judge's error in denying Petitioner the opportunity to testify." [Doc. 1.]  Here, the PCR court held an evidentiary hearing and outlined a factual basis for declining to find trial counsel's representation fell below the *Strickland* and applicable state law standards.  [App. 357–84

---

[6]In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. at 687.  To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 692.  The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.

(evidentiary hearing), App. 385–91 (PCR court's findings of fact, conclusions of law, and

analysis).]  The PCR court made the following factual findings:

>    The [Petitioner] stated he was arrested on the charges in December 2002 but
> an attorney was not appointed to represent him.  The [Petitioner] stated that, even
> though he did not give consent, he had to provide a blood sample at the detention
> center.  The [Petitioner] stated he learned in early 2004 that an attorney, Jay Ervin,
> was involved with his case.  The [Petitioner] stated Judge John Milling relieved Mr.
> Ervin in February 2004 and another attorney, Richard Jones, then handled his case.
> The [Petitioner] testified he hired trial counsel in December 2005.  The [Petitioner]
> testified the State's evidence was the victim's testimony and the DNA evidence
> obtained as a result of the consent *Schmerber* order.  The [Petitioner] testified that,
> at a hearing immediately before trial, trial counsel moved to suppress the blood and
> DNA evidence because there was no valid consent for the *Schmerber* order.  The
> [Petitioner] testified trial counsel failed to call either him or Mr. Ervin as witnesses
> at the suppression hearing.  The [Petitioner] stated trial counsel failed to object
> when the DNA results were offered into evidence.
>
>    Trial counsel testified he was hired a few months before trial.  Trial counsel
> testified he received copies of the discovery materials from both Mr. Jones and the
> State, and that he reviewed those materials with the [Petitioner].  Trial counsel
> testified his strategy was to move to suppress the DNA evidence because the only
> other evidence in the case was the victim's testimony (which he believed had
> inconsistencies).  Trial counsel testified he understood Mr. Ervin was the attorney
> of record at the time of the *Schmerber* consent order but stated that, as the
> [Petitioner] did not know this, he believed this invalidated consent.  Trial counsel
> stated he asked the trial judge to allow the [Petitioner] to testify on this issue at the
> suppression hearing, but that the judge decided this would be self-serving
> testimony.  Trial counsel stated he made a judgment call not to have Mr. Ervin
> testify at the hearing because he believed it would also be self-serving testimony.
> Trial counsel stated he did not make continuous objections to the DNA evidence at
> trial because he felt it would have prejudiced the jury against the [Petitioner].

[App. 387–88.]  The PCR court found trial counsel's testimony credible and Petitioner's

testimony not credible, and found that "trial counsel adequately conferred with the

[Petitioner], conducted a proper investigation, and was thorough[sic] in his representation."

[*Id*. at 388.]   Further, the PCR court concluded that trial counsel appropriately contested

the *Schmerber* order at the suppression hearing and counsel requested that Petitioner be

permitted to testify. [*Id.* at 389.] The judge declined to hear Petitioner's testimony, finding

22

the consent order to be self-proving. [*Id.*] Moreover, the PCR court found that trial counsel had a valid strategy for not calling Mr. Ervin to the stand, namely that after a warning from the trial judge, counsel felt Ervin's testimony would be "self-serving" and not ultimately beneficial to his client. [*Id.*]   Finally, the PCR court held that counsel's decision not to object to the DNA evidence was reasonable, and "likely a wise strategy, as the DNA and paternity evidence proved the [Petitioner] impregnated the victim when she was thirteen (13) years old." [*Id.* at 390.]

Accordingly, the PCR court considered Petitioner's argument that his trial counsel should have objected to the DNA evidence but found Petitioner had failed to state a claim pursuant to *Strickland* because trial counsel made a tactical decision that continued objections would prejudice Petitioner.   Counsel did move for the suppression of the evidence for lack of consent.  The PCR court also found that counsel was reasonable in determining that calling Erwin would be detrimental to his client's case.  Ultimately, the PCR court concluded Petitioner had failed to prove either prong of *Strickland*.  [App. 387–90.]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court

23

precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. The record reflects that trial counsel vigorously argued against admission of the DNA evidence due to lack of consent. [App. 55–56.] The record further demonstrates that the trial judge "decline[d] to take testimony from [Petitioner] about this *Schmerber* order. It seems to be that the document itself . . . is self proving." [*Id.* at 59–60.] Moreover, the judge stated that he would give trial counsel an opportunity to call Mr. Ervin "if you believe that would bear on this issue. But, this document seems to me to be clearly self-proving, seems to be consent, and seems to be upon the motion of the defendant, which would be appropriate if the defendant felt it would exonerate him." [*Id.* at 60–61.] Thus, the record supports the PCR court's determination that Petitioner failed to demonstrate either prong of the *Strickland* standard. Therefore, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on Ground Three.

## CONCLUSION

Wherefore, based upon the foregoing, the Court recommends Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

May 22, 2014
Greenville, South Carolina

24